UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,            :     INFORMATION

     -v.-                           :     10 Cr. ___ (___)

JULES ROBBINS,                       :

          Defendant.              :

- - - - - - - - - - - - - - - - - -x

## COUNTS ONE THROUGH FIVE
### (Subscribing to False Individual Tax Returns)

The United States Attorney charges:

### Introduction

1.   At all times relevant to this Information, the Internal Revenue Service ("IRS") was an agency of the United States Department of Treasury responsible for administering and enforcing the tax laws of the United States and collecting the taxes owed to the Treasury of the United States.

2.   At all times relevant to this Information, UBS AG ("UBS") was a corporation organized under the laws of Switzerland. UBS, directly and through its subsidiaries, operated a global financial services business. Among other things, UBS provided banking, wealth management, and asset management services all over the world, including to United States taxpayers living in the Southern District of New York.

3.   Beginning at least in or about 2000, UBS, through various of its employees, engaged in a scheme to assist United States taxpayers who had accounts at UBS in Switzerland in

concealing the existence of those accounts, and the income earned in those accounts, from the IRS.

    4. Among the means by which UBS and others assisted certain United States taxpayers who had accounts at UBS in concealing the existence of the UBS accounts, and the income earned in UBS accounts, from the IRS, were the following:

    a. Using sham corporations and foundations formed under the laws of offshore jurisdictions to conceal, from the IRS, the ownership by United States taxpayers of certain UBS accounts;

    b. Accepting and including in UBS's account records IRS Forms W8-BEN (Certificate of Foreign Status of Beneficial Owner for United States Tax Withholding) and UBS's equivalent forms that falsely stated that sham offshore corporation and foundations were the beneficial owners of certain UBS accounts when, in fact, as UBS and the United States taxpayers well knew, United States taxpayers were the beneficial owners of those UBS accounts.

### The Defendant

    5. At all times relevant to this Information, JULES ROBBINS, the defendant, was a United States citizen who resided in the State of New York. At various times relevant to this Information, ROBBINS owned and operated companies that distributed watches, at least one of which had an office in New

York, New York.

### Swiss Lawyer A

6. At various times relevant to this Information, Swiss Lawyer A, an independent Swiss lawyer, provided legal advice and services to United States taxpayers who wished to set up sham offshore corporations and foundations in order to conceal their assets and income from the IRS. Swiss Lawyer A received a master's degree in tax law from the University of San Diego in 1999 and was a member of the Swiss-American Chamber of Commerce. Swiss Lawyer A worked at an eponymous law firm based in Zurich, Switzerland. As described in more detail below, Swiss Lawyer A served as a board member and director of sham offshore entities that UBS, Swiss Lawyer A, and JULES ROBBINS, the defendant, used to conceal ROBBINS's beneficial ownership of his UBS accounts.

### ROBBINS's UBS Accounts

7. At various times, JULES ROBBINS, the defendant, maintained at least the following accounts at UBS (collectively, the "ROBBINS UBS Accounts"):

#### ROBBINS's Aventicum Account

a. On or about August 9, 1967, in Vaduz, Liechtenstein, ROBBINS opened and caused to be opened a UBS account in the name of Aventicum Foundation, a foundation formed under the laws of Switzerland ("Aventicum Account").

b. On or about November 29, 2000, ROBBINS and

Swiss Lawyer A entered into a contract that provided for Swiss Lawyer A to become a member of the board of the Aventicum Foundation and thereafter "act exclusively for and on behalf and according to the instructions" of ROBBINS. The contract listed ROBBINS's address in New York, New York. On or about February 1, 2001, Swiss Lawyer A became an authorized signatory of the Aventicum Account.

        d.    At all times relevant to the Information, ROBBINS was the sole beneficial owner of the Aventicum Account, and exercised control over the funds in the account. For example, on or about March 27, 2000, in Zurich, Switzerland, ROBBINS signed a withdrawal slip to withdraw $19,000 in cash from the Aventicum Account.

        <u>ROBBINS's Waldenburg Account</u>

        e.    On or about November 6, 2000, Waldenburg Finance Limited, a sham offshore corporation, was formed under the laws of Hong Kong. That same day, Swiss Lawyer A signed a UBS document designating him a "Director" of Waldenburg Finance Limited and giving him signature authority on behalf of the corporation.

        f.    On or about November 10, 2000, in Zurich, Swiss Lawyer A opened a UBS account in the name of Waldenburg Finance Limited ("the Waldenburg Account"). At this time, and to avoid United States law enforcement authorities, Swiss Lawyer A

instructed UBS to send all correspondence regarding the Waldenburg Account to Swiss Lawyer A's law firm in Zollikon, Switzerland, and for a copy of the correspondence to be retained by UBS in Switzerland. That same day, Swiss Lawyer A signed a UBS document certifying that ROBBINS, of New York, New York, was the sole beneficial owner of the Waldenburg Account. Also on that day, Swiss Lawyer A, signed and caused to be completed an IRS Form W8-BEN, in which Swiss Lawyer A falsely certified, under penalties of perjury, that Waldenburg Finance Limited was the "beneficial owner" of the Waldenburg Account. (Later, on or about November 11, 2004, and on or about June 26, 2007, Swiss Lawyer A signed UBS's "Substitute Form W-8BEN" in which he again certified, under penalties of perjury, that Waldenburg Finance Limited was the "beneficial owner" of the Waldenburg Account "according to U.S. tax law.")

    g. On or about November 14, 2000, ROBBINS entered into an agreement concerning Swiss Attorney A's obligations as a director of Waldenburg Finance Limited. In this agreement, ROBBINS certified that ROBBINS was the "the beneficial owner of or acting for or on behalf of the beneficial owner" of Waldenburg Finance Limited.

    h. On or about November 29, 2000, ROBBINS signed a UBS document instructing the board of the Aventicum Foundation to transfer all assets in the Aventicum Account to the newly

5

formed Waldenburg Account, and to close the Aventicum Account.

    i. Thereafter, the year-end account balances, based upon, among other things, the market values of the assets, in the Waldenburg Account were approximately as follows:

| 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 |
|---|---|---|---|---|---|---|
| $32.3 million | $22.4 million | $33.2 million | $31.8 million | $33.5 million | $36.3 million | $41.7 million |

    j. On or about October 10, 2006, ROBBINS's UBS client advisor completed a UBS document titled "'Domiciliary companies' decision sheet," in which he certified that Waldenburg Finance Limited "does not have [its] own business premises"; "does not have [its] own staff that work[s] exclusively for [it]"; and "has staff who deal exclusively with administrative work such as bookkeeping and/or correspondence."

   8. On or about September 11, 2006, JULES ROBBINS, the defendant, met with a UBS banker in ROBBINS's office in New York, New York, to discuss the possibility of opening an additional UBS account in Hong Kong.

### UBS Documents Concerning ROBBINS

   9. Pursuant to its due diligence obligations under Swiss law, UBS maintained documents and information concerning JULES ROBBINS, the defendant, in its business records. These records included a copy of ROBBINS's United States passport, and a "Client Profile and Acceptance Checklist" dated October 19,

2006, which stated, among other things, that ROBBINS "wants to be 100% in charge" of investment decisions relating to his UBS accounts. In addition, UBS maintained the following information about ROBBINS: that ROBBINS and UBS had a "40 year[]" relationship, and that ROBBINS's Swiss-based UBS funds had "grown significantly over the years through pure US stock investments."

### ROBBINS's False Tax Returns

10. Citizens and Legal Permanent Residents of the United States who have income in excess of a threshold amount in any one calendar year are obligated to file an Individual Income Tax Return, Form 1040 ("Form 1040"), for that calendar year with the IRS. On such a return, United States taxpayers are obligated to report their worldwide income.

11. For calendar years 2002 through 2007, JULES ROBBINS, the defendant, filed Forms 1040 with the IRS after signing them under penalties of perjury. For each of these years, ROBBINS's returns were prepared by a professional tax preparer ("Tax Preparer A"). On each of these returns, ROBBINS reported his adjusted gross income and total tax due, among other things. However, ROBBINS knowingly failed to disclose to Tax Preparer A for at least ROBBINS's 2002 through 2007 tax returns the existence of the Waldenburg Account, and the income earned in that account, during the relevant years. Accordingly, for each of these years, ROBBINS willfully failed to report income earned

in his Waldenburg Account.

    12. In addition, on Schedule B of Form 1040, a U.S. taxpayer must report whether, at any time during the relevant calendar year, the taxpayer had "an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account." If the taxpayer answers that question in the affirmative, then he or she must report the name of the country in which the account is located.

    13. For at least calendar years 2002 through 2007, JULES ROBBINS, the defendant, under penalties of perjury, falsely certified on Schedule B of Form 1040 that he did not have an interest in, or a signature or other authority over, a financial account in a foreign country, when, in truth and in fact, as ROBBINS well knew, he was the sole beneficial owner of the Waldenburg Account during those years.

### ROBBINS's Failure To File FBARs

    14. Separate and apart from the obligation to file Forms 1040, United States taxpayers who have a financial interest in, or signature or other authority over, a financial account in a foreign country with an aggregate value of more than $10,000 at any time during a particular year are required to file with the IRS a Report of Foreign Bank and Financial Accounts, Form TD F 90-22.1 ("FBAR"). Indeed, on Schedule B of Form 1040, U.S.

taxpayers who have an interest in, or signature or other authority over, financial accounts in foreign countries are specifically directed to refer to IRS instructions relating to the FBAR. The FBAR for any particular year is required to be filed on or before June 30 of the following year. The FBAR requires that the filer identify the financial institution with which the financial account is held, the type of account (either bank, securities, or other), the account number, and the maximum value of the account during the calendar year for which the FBAR is being filed.

15. By virtue of his beneficial ownership and signature authority over the Waldenburg Account, JULES ROBBINS, the defendant, was required to file FBARs for at least calendar years 2000 through 2007. For at least calendar years 2000 through 2007, ROBBINS failed to file FBARS by the deadline of June 30 of the following year, as required.

### Statutory Allegations

16. On or about the filing dates set forth below, in the Southern District of New York, the Eastern District of New York, and elsewhere, JULES ROBBINS, the defendant, unlawfully, willfully, and knowingly did make, subscribe, and file U.S. Individual Income Tax Returns, Forms 1040, for the calendar years set forth below and filed on or about the dates indicated below, which returns contained and were verified by the written

declaration of ROBBINS that they were made under penalties of perjury, and which returns ROBBINS did not believe to be true and correct as to every material matter, in that ROBBINS: (a) failed to report income received by him in one or more bank, securities, and other financial accounts at UBS; and (b) failed, on Schedule B, Part II, line 7a, to report that he had an interest in, or a signature or other authority over, bank, securities, and other financial accounts in Switzerland, whereas ROBBINS then and there well knew and believed that he had received income in one or more accounts at UBS and had an interest in, or a signature or other authority over, bank, securities, and other financial accounts in Switzerland:

| Count | Calendar year | Approximate Date of Filing |
|-------|---------------|----------------------------|
| One   | 2003          | April 14, 2004             |
| Two   | 2004          | October 17, 2005           |
| Three | 2005          | May 11, 2006               |
| Four  | 2006          | April 17, 2007             |
| Five  | 2007          | August 7, 2008             |

(Title 26, United States Code, Section 7206(1); Title 18, United States Code, Section 2.)

*Preet Bharara*

PREET BHARARA
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**

- v. -

**JULES ROBBINS,**

**Defendant.**

**INFORMATION**

10 Cr.     (RJH)

(Title 26, United States Code, Section 7206(1),
Title 18, United States Code, Section 2).

PREET BHARARA
United States Attorney.